ERWIN MILLS, INC. (FORMERLY ERWIN COTTON MILLS COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41233. Filed August 8, 1957.

*Richard B. Barker, Esq.,* and *Jay W. Glasmann, Esq.,* for the petitioner.

*William J. Stetter, Esq.,* for the respondent.

### OPINION.

MURDOCK, *Judge:* The Commissioner of Internal Revenue has allowed, and the petitioner has agreed to the amount of, relief based upon section 722 (b) (4) for the years 1941 through 1945, but the Commissioner has denied further relief under the petitioner's applications for those years based upon section 722 (b) (2) and (3) (A). The issue for decision here is whether the petitioner is entitled to any additional relief for the taxable years under either section 722 (b) (2) or, in the alternative, section 722 (b) (3) (A).

The evidence in this case was presented before a commissioner of this Court; he made findings of fact; those findings were served upon the parties; and the parties filed some objections to those findings. The objections have been carefully considered. A number of them are not meritorious. However, the parties appear to agree that the last sentence of finding 41 is in error and it may be that Exhibit 35–A should be substituted in finding 45 for Exhibit 35. Neither of those findings could make any difference in the conclusion reached herein. All the facts upon which the Court relies in reaching its conclusion have been correctly found. Therefore, the Court adopts for the purpose of this Opinion the findings of fact served upon the parties, with the exception of the two mentioned.

The Commissioner recognized that the petitioner qualified for relief under section 722 (b) (4) because of increased capacity and the introduction of new products during the base period and determined a constructive average base period net income of $1,060,000 because of the claims made under section 722 (b) (4).

The petitioner has been engaged for many years in manufacturing cotton textiles in North Carolina and was operating 6 cotton mills and a vat-dye plant at the end of the base period. It spins yarns from raw cotton, weaves the yarn into cloth, and dyes and finishes the cloth. It manufactured denims, a variety of medium weight carded cotton fabrics, wide sheeting, sheets, and pillow cases. The quantities of each

type of goods manufactured varied somewhat as appears in the findings of fact. Speaking generally, the petitioner was a part of the southern cotton textile industry as opposed to the northern.

The petitioner says that there are really only four basic questions for the Court to consider:

1. Were the taxpayer and its industry (the southern cotton textile industry) depressed during the period 1936–1939?

2. What was the cause of the depression, if it existed?

3. Was the cause of the depression a temporary economic event or circumstances within the meaning of section 722 (b) (2)?

4. In the alternative, was the cause of the depression a cyclical factor within the meaning of section 722 (b) (3) (A)?

The petitioner argues that its industry for the purposes of section 722 is the entire southern cotton industry. The correctness of this contention will be assumed for the purpose of this case. Both parties concede that statistical data for the southern cotton textile industry as a whole are not available to the extent here necessary. Both parties resort to statistical data relating to 178 corporations engaged in the cotton textile business in the southern States and the petitioner directs attention particularly to 90 corporations of that group, which used a calendar year period of accounting. The petitioner uses "data of 90 and 178 Southern cotton textile corporations as representative of the industry."

The petitioner argues that it qualifies for additional relief under section 722 (b) (2), and, in the alternative, under section 722 (b) (3) (A). The petitioner concedes that the adjustments which it has received because of section 722 (b) (4) qualification raise its earnings for the base period to the "depressed" level of its industry as represented by the 90 or the 178 corporations, and its argument, thus narrowed, is that that industry was depressed during the base period. The question then is whether the excess profits taxes without the further benefit of section 722 are to be considered excessive and discriminatory in the case of this taxpayer because its average base period net income is an inadequate standard of normal earnings "because of the fact that an industry of which such taxpayer was a member was depressed by reason of temporary economic events unusual in the case of such industry."

The various tables set forth in the findings of fact show that the averages for the base period years (despite the general business recession in 1938) were better than similar averages for the long-term period 1922 through 1939 for both the 178-corporation group and for the 90-corporation group. Since the base period years were better years on the average, it would seem to follow that the industry was not depressed during the base period years. The petitioner argues, nevertheless, that these data, if properly appraised, will show that the in-

dustry represented by these corporations was depressed during the base period. The petitioner states that—

its base period earnings and the base period earnings of its industry must be adjusted for growth before being compared to average earnings in the 18-year period, 1922–1939, for purposes of determining the presence or absence of depression in the base period. Once this is done the depressed level of earnings for both the taxpayer and its industry in the base period becomes evident.

This argument and its application to the facts of record are somewhat elusive. The argument seems to be that the industry represented by these corporations was growing and becoming more prosperous at rates more rapid than those of industry generally and since the earnings of that industry during the base period did not maintain the advantage over the earnings of industry generally which would have been expected from the more rapid growth which that industry was enjoying as compared to the growth of industry generally, it was depressed. Perhaps a better statement of the argument is that since the "growth in output" of the petitioner's industry, as represented by the 90 or the 178 corporations, was faster than that of business generally, it therefore follows that the profits of the petitioner's industry, as represented by the 90 or the 178 corporations, should show a correspondingly more rapid improvement during the base period over the improvement in profits of business generally during the base period. In other words, although the earnings of each of these groups actually improved during the base period, as compared to the longer period, nevertheless they were "depressed" because there was reason to believe that they should have improved even more. This first step in the petitioner's argument is essential under section 722 (b) (2) and also under section 722 (b) (3) (A). It may be assumed for present purposes that the statistical data substantially support the petitioner's theory. Still, this Court does not agree that the business of the taxpayer (after the adjustments obtained under section 722 (b) (4)), or that the industry represented by the 178 corporations or by the 90 corporations, was depressed during the base period within the meaning of section 722 (b) (2) or (3) (A). The base period years were relatively good years for the group rather than depressed years.

There have been cases where a depressed situation in the base period was recognized although the earnings of the base period were higher on the average than those for the longer period, but the circumstances which justified that conclusion in those cases are not present here. For example, in *Ainsworth Manufacturing Co.*, 23 T. C. 372, 376, one of the cases cited by the petitioner in this connection, the fact that the average earnings for the base period exceeded those for an earlier period was disregarded because—

the volume of the business of the petitioner had become reasonably well established by 1934 and it is proper, under all of the circumstances, to recognize a

higher normal level of earnings for present purposes than might be justified by averages which would give the same recognition to the figures for the period prior to 1934 as would be given to the figures after 1933. * * *

There was a loss for 1938 and earnings of only about $182,000 for 1939, whereas from 1934 through 1937 the average annual earnings had been in excess of $1,000,000. The situation relied upon in this case is not comparable. The earnings of the 178-corporation group, of the 90-corporation group, and of the petitioner (after relief under section 722 (b) (4)) were not actually depressed during the base period compared to those of recent prior years. The theoretical base period depression claimed by the petitioner does not bring it within either section 722 (b) (2) or (3) (A).

It thus becomes unnecessary to consider the other elements of the petitioner's argument: That the alleged depression was due to the oversupply of cotton resulting from the record crop of 1937, and that oversupply was a temporary economic event within the meaning of section 722 (b) (2) or was a cyclical factor within the meaning of section 722 (b) (3) (A). Likewise, the Commissioner's argument that relief under section 722 (b) (3) (A) for 1941 is barred, need not be considered.

Reviewed by the Special Division.

*Decision will be entered under Rule 50.*